UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60350-CIV-DIMITROULEAS/SNOW

CLEAN COAL TECHNOLOGIES,
INC.,

      Plaintiff,

vs.

HELENE HAMILTON, et al.

      Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the plaintiff's Motion for Sanctions (DE 74), which was referred to United States Magistrate Judge Lurana S. Snow. The motion is fully briefed, and an evidentiary hearing was held on July 1, 2010.

### I. PROCEDURAL HISTORY

The instant case was filed on March 6, 2009, seeking preliminary injunctive relief against the defendants. On April 3, 2009, the Court denied preliminary injunctive relief. The plaintiff filed two duplicate Amended Complaints (DE 51-52), seeking a preliminary injunctive relief to prohibit the removal of restrictive legends from Defendant Helene Hamilton's shares of common stock in the plaintiff corporation. On November 18, 2009, the Court granted defendant Helene Hamilton's Motion to Dismiss First Amended Complaint and denied the plaintiff's request for

preliminary injunction. The Court also denied defendant Hugh Hamilton's Motion to Dismiss Amended Complaint as moot. (DE 72)

On December 4, 2009, the plaintiff filed the instant Motion for Reconsideration, Motion to Compel and Motion for Sanctions (DE 74). The motion seeks reconsideration of the Court's order granting defendant Hugh Hamilton's Motion to Dismiss Amended Complaint, an order compelling the deposition of Steve Lazarus and sanctions against defendant Hugh Hamilton and his counsel. On December 10, 2009, the Court denied the motion for reconsideration because defendant Hugh Hamilton's Motion to Dismiss Amended Complaint had not been granted, but denied as moot. The Court declined to enter an order compelling the deposition of Lazarus, and referred the Motion for Sanctions to the undersigned. (DE 72)

The plaintiff seeks sanctions against Hugh Hamilton (hereinafter "Hamilton") and attorney Michael Holden (hereinafter "Holden") based on the fact that Hamilton had brought a gun to the deposition of Steve Lazarus, causing Lazarus to terminate the deposition before it was concluded. Since the case has been dismissed, the requested sanctions are an award of attorneys' fees for the deposition and fees associated with the filing of the instant motion.

## II. FACTS PRESENTED

At the evidentiary hearing, Roger Fidler, Esq., counsel for the plaintiff, testified that the deposition of Stephen Lazarus

2

was scheduled noticed for June 30, 2009.  Mr. Fidler recalled that the deposition was scheduled to begin at 10:00 a.m., but actually started somewhat later.[1]  Mr. Fidler had arrived early and had a conversation with Hamilton and attorney Holden, who was representing defendant Helene Hamilton, Hugh Hamilton's mother. Mr. Fidler asked why Hugh Hamilton was at the deposition.  Hamilton replied that he had his mother's power of attorney and was attending in her place. During an outdoor smoking break prior to the deposition, Mr. Fidler observed Hamilton go to his vehicle and return with his hand held in an odd way.

During the deposition, when Mr. Fidler was about to question Lazarus about his recanting of a prior affidavit, Hugh Hamilton leaned over and exposed a gun that was on his person. Lazarus pointed out the gun, left the deposition room and hid in another room.  Lazarus told Mr. Fidler that he was afraid of Hamilton.  When Mr. Fidler objected to the gun, Holden read from a statute book a provision dealing with where you can bring a gun in the state of Florida.  At the time, Mr. Fidler believed that the statute book belonged to Holden.

Hamilton offered to turn over the gun.  Mr. Fidler observed that the gun had a clip, but he could not tell if there were bullets in it.  Hamilton did not say that the gun was not loaded.

---

[1] The transcript of Lazarus' deposition reflects that it began at 2:18 p.m.

3

On cross examination by counsel for Holden, Mr. Fidler conceded that the deposition was held at his client's place of business and that there was security at that location. He also acknowledged that he was not familiar with Florida's gun laws. Mr. Fidler stated that the gun became visible when Hamilton leaned forward to reach for a document. Although it was suggested that Holden hold the gun during the deposition, Lazarus refused to continue.

Rocky Lapmardo testified that he is the director of corporate security for the plaintiff corporation. He stated that he was present at the deposition of Lazarus and first saw Hamilton when he entered the conference room. The gun was visible while Mr. Fidler was asking Lazarus why he had changed his affidavit. Lazarus became agitated and scared when he saw the gun, and left the room. Hamilton removed the clip, and Mr. Lapmardo asked Holden to take the gun.

On cross examination, Mr. Lapmardo stated that he had not seen the gun. He acknowledged that there were no signs at the facility prohibiting guns.

Stephen Lazarus testified that when Hamilton worked in Lazarus' home, he carried guns. Lazarus stated that he was not afraid on those occasions, but thought Hamilton's behavior was disrespectful. Lazarus recalled that he left the deposition room when he saw the gun because he is on probation and it is against the law for him to be around guns. Lazarus conceded that he did

4

not know what was in Hamilton's mind, but opined that the only reason to bring a gun to a deposition was to get someone to say something he should not.

Lazarus testified that suffers from COPD, diabetes and many other medical conditions. He stated that Hamilton knew that he was on probation. Lazarus did not recall what question had been asked when he left the room, but did remember that he said he would not testify further.

On cross examination, Lazarus acknowledged that Hamilton did not take out the gun and wave it around, but Lazarus was able to see the handgrip. Lazarus had known for a few years that Hamilton carried a gun. Hamilton had never threatened Lazarus in Lazarus' home.

On redirect examination, Lazarus testified that he refused to continue with the deposition because Hamilton had a gun and a history of unstable behavior. He added that Hamilton had a means of taking Lazarus life, and Lazarus feared for his life. He did not believe Holden knew about the gun or would hurt anyone.

The plaintiff called Hugh Hamilton as its witness. Hamilton testified that he owns a pain management clinic, but that he himself has never been treated for anything other than mild depression. He stated that he carries a gun every day. Hamilton believed that Lazarus was not intimidated by the gun, but by Hamilton's presence, because Hamilton knew that Lazarus had embezzled money. Hamilton stated that he went to his car during

5

the smoking break to retrieve papers, not his gun. Hamilton also stated that he always carries with him a copy of the Florida concealed weapon statute in case there is a question about his right to possess a gun.

The plaintiff also called as a witness Michael Holden, Esq. Mr. Holden testified that he has known Hamilton for about five years. Hamilton asked Mr. Holden to represent his mother, Helene Hamilton, for whom Hamilton had power of attorney. Mr. Holden stated that Hamilton was attending the deposition as his mother's agent. Mr. Holden was present as Helene Hamilton's attorney and did not represent Hugh Hamilton.

Mr. Holden stated that he defended Hamilton's right to bring a gun to the deposition because he is an advocate and because he was trying to keep everyone calm. Mr. Holden said that he was surprised by the gun and did not know Hamilton had brought it to the deposition. He did not think Lazarus was frightened by the gun, but rather that he did not want to testify with Hamilton in the room. In Mr. Holden's opinion, this was the reason why the deposition began late. Mr. Holden acknowledged that he had never attended a deposition in which he knew someone was carrying a concealed weapon.

On cross examination, Mr. Holden testified that there could have been guns in depositions that he did not know about because they had been concealed. He stated that there had been no agreement between himself and Hamilton to bring in a gun for the

purpose of scaring Lazarus.  Mr. Holden related that had not brought the statute with him, and had not even been aware of the statute before the deposition.

Mr. Holden stated that although Hugh Hamilton had been added as a party to the case a few days earlier, he was attending the deposition on behalf of his mother.  For that reason, Mr. Holden believed Hamilton had a right to be there.  Mr. Holden testified that Hamilton never waved around the gun.  Mr. Lapmardo told Mr. Holden to remove the gun; Mr. Holden asked Mr. Lapmardo to take it.

Hamilton and Holden called as a witness Brandon Douglas, Esq., a Florida licensed attorney specializing in family law.  Mr. Douglas testified that he has held a Florida concealed weapons permit since the 1980s and that he brings his gun to depositions all the time.  He also is aware of litigants who have brought their guns to depositions.

Hamilton introduced into evidence a copy of the statute that he brought into the deposition and a copy of a tape recording Hamilton had made of the deposition.  Hamilton asked that sanctions be imposed against the plaintiff.

### III. RECOMMENDATIONS OF LAW

The plaintiff contends that Hamilton brought the gun to the deposition to intimidate Lazarus, and that Holden had prior knowledge of, and agreed to this strategy.  The undersigned finds that there is no evidence even suggesting that Mr. Holden knew

7

about the gun before it was called to his attention at the deposition, and there is no basis for imposing sanctions against him.  As to Hugh Hamilton, the undersigned finds:

 1. Hamilton has a concealed weapons permit and carries a gun every day, a fact which Lazarus was aware;

 2. Hamilton had brought a gun into Lazarus home and had never threatened Lazarus, and Lazarus was not frightened by Hamilton's possession of a gun in his home;

 3. Hamilton did not bring the gun to the deposition for the purpose of frightening Lazarus and did not deliberately display the gun to Lazarus;

 4. Lazarus' primary concern, as testified to by Lazarus, was that he was on probation and could not be around guns; he also expressed concern that Hamilton had exhibited unstable behavior and had the potential to harm Lazarus;

 5. Hamilton's act of bringing the gun to the deposition did not violate Florida law, Fla. Stat. § 790.06, or any rule of this Court, and

 6. There was no reason why the gun could not have been removed and the deposition continued, but Lazarus chose not to answer further questions.

 Based on these findings, the undersigned concludes that there was no deliberate misconduct by Hamilton which warrants the impositions of sanctions.

IV. CONCLUSION

For the foregoing reasons, and being duly advised, it is hereby

RECOMMENDED that the Plaintiff's Motion for Sanctions (DE 74) be DENIED.

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1998), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 7th day of July, 2010.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

All Counsel of Record